IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES FLYNN, et al.,

    Plaintiffs,

      v.

ROANOKE COMPANIES GROUP,
INC., doing business as
Tile Perfect, Inc., et al.,

    Defendants.

CIVIL ACTION FILE

NO. 1:06-CV-1809-TWT

NO. 1:07-MD-1804-TWT

## OPINION AND ORDER

This is a personal injury action.  It is before the Court on the nonparty Cable
News Network, Inc.'s Motion to Quash the Subpoena for Production of Documents
Issued by Aerofil Technology, Inc. [Doc. 433].  For the reasons stated below, the
motion is GRANTED in part and DENIED in part.

## I.  Background

Aerofil is one of several Defendants in the Tile Perfect Stand 'n Seal Spray-On
Grout Sealer product liability cases.  During discovery, Aerofil deposed one of the
Plaintiffs, Dr. Walter Friedel.  During the deposition, Dr. Friedel disclosed that he had
appeared on a segment of the CNN show *Anderson Cooper 360°* entitled "Consumer

Product Safety Commission Falling Down on the Job?"  The CNN story addressed complaints about Stand 'n Seal's safety.  As a result, Aerofil issued a subpoena to CNN, demanding "footage, raw and final, aired or unaired, of any interviews with Walter Friedel or any other witness relating to the Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."  CNN moved to quash the subpoena on the grounds of privilege. CNN contends that (1) it is entitled to a reporter's privilege, and (2) that it is protected by the Georgia Reporter's shield.

## II. Standard

Under the Federal Rules, privileged matter is not discoverable.  Fed. R. Civ. P. 26(b)(1) (authorizing parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party").   And federal courts are authorized to determine the scope of privilege by looking to the principles of the common law.  See Fed. R. Evid. 501.  In a case such as this, where federal jurisdiction is predicated upon the existence of a federal question, the federal law of privilege provides the rule of decision, even if the allegedly privileged material bears on a pendent state law claim.  Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992); Jenkins v. DeKalb County, 242 F.R.D. 652, 655 (N.D. Ga. 2007).

III.  Discussion

CNN argues that it is entitled to a First Amendment privilege as to Aerofil's subpoena on the grounds that the request constitutes a compelled disclosure of professional news gathering efforts.   Although CNN is entitled to a qualified reporter's privilege when it comes to disclosing all unaired footage of the program in question, that privilege does not extend to a nonconfidential interview with a plaintiff in this class action which was in part broadcast on the show.   As I will explain below, Aerofil has made a specific showing that the unaired footage of interviews with Dr. Friedel is relevant, cannot reasonably be obtained by other means, and is important to its ability to defend against this lawsuit.

Neither the Supreme Court, nor the Eleventh Circuit, has recognized a nonparty reporter's privilege in a civil proceeding.   And the controlling authority cited by CNN deals only with the compelled disclosure of confidential sources.   See Price v. Time, 416 F.3d 1327, 1343 (11th Cir. 2005) (recognizing qualified First Amendment privilege to protect confidential informants); Miller v. Transamerican Press, Inc., 621 F.2d 721, 725 (5th Cir. 1980) ("We hold that a reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants, however, the privilege is not absolute and in a libel case as is here presented, the

privilege must yield."). But this dispute has nothing to do with confidentiality, and CNN has not identified anything confidential in the unaired footage.

Federal Rule of Evidence 501, however, empowers federal courts to honor privileges recognized under the federal common law. See Jaffee v. Redmond, 518 U.S. 1, 8 (1996) ("Rule [501]did not freeze the law governing the privilege of witnesses in federal trials at a particular point in our history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.") (quoting Trammel v. United States, 445 U.S. 40, 47 (1980)). And other circuits have recognized a qualified reporter's privilege as it pertains to discovery of nonconfidential information in civil cases. See, e.g., Shoen v. Shoen, 48 F.3d 412, 416 (recognizing "that routine court-compelled disclosure of research materials poses a serious threat to the vitality of the news gathering process"); United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1998) ("We discern a lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled."). My decision to recognize the privilege, while not compelled by, is informed by Georgia's Reporter's Shield Law, which protects nonparty journalists from disclosing information obtained in preparation of news. O.C.G.A. § 24-9-30. The decision to refer to state law is sensible in a case like this

where the overwhelming majority of claims are based on diversity jurisdiction and state law claims.

The standards for determining the limits of the privilege are virtually identical under the federal common law as they are under the Georgia statute.  The questions are: (1) is the material relevant? (2) can it be reasonably obtained by alternative means? and (3) is it necessary to the proper presentation of a party's case?  See id.; United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir. 1986) (recognizing that "information may only be compelled from a reporter claiming privilege if the party requesting the information can show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources").

At the hearing, Aerofil did not contest the fact that a qualified reporter's privilege applies in this instance.  Rather, it argued that CNN should comply with the subpoena because the unaired footage of Dr. Friedel is relevant, it cannot be obtained by alternate means, and Aerofil has a compelling interest in the information.  See, e.g., Caporale, 806 F.2d at 1504.  Aerofil has demonstrated that the interview footage is relevant for three reasons: (1) it will fill gaps in Dr. Friedel's deposition; (2) the footage may be relevant to a contributory negligence defense as it contains unaired segments where Dr. Friedel demonstrates how he used the spray in his bathroom; (3) the unaired footage of the demonstration will yield probative evidence of how the

product was actually used.  Contrary to CNN's assertions, these are not claims of "potential relevance," but rather explanations for why the footage actually bears on the issues in this action.  Furthermore, there is sufficient need for the evidence.  None of this information can be obtained by a deposition alone.

To the extent that there is a "lurking and subtle threat" to journalists when they are required to turn over nonconfidential video footage of interviews with plaintiffs in civil class actions, the threat must be subtle indeed as it cannot be seen by the naked eye.  I am not persuaded that the freedom of the press is in anyway hampered when a news broadcasting corporation turns over nonconfidential video footage of a plaintiff interview.  Furthermore, turning over the unaired video footage should have no effect, whatsoever, on CNN's news gathering efforts.  Although CNN argues that such disclosures "chill" news gathering efforts, it has not effectively communicated what it is about the news gathering process that gets so chilly in a case like this.  To the extent there is some incidental burden to turning over the footage, the First Amendment cannot protect CNN from such an insubstantial burden.  See Branzburg v. Hayes, 408 U.S. 665, 682 (1972) ("It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil and criminal statutes of general applicability.").  As to the open ended request for unaired video footage that has nothing to do with Dr. Friedel,

Aerofil has failed to make the requisite showing.  It cannot, and does not, explain why every piece of unaired footage is either relevant or a necessary part of its defense. Speculating about possible relevance, rather than showing actual relevance, is not enough to compel journalists to empty their newsroom files.  See, e.g., Shoen, 48 F.3d at 416 (noting that "there must be a showing of actual relevance; a showing of potential relevance will not suffice").  The Motion to Quash is granted as to the other material.

IV. Conclusion

For the reasons stated above, the nonparty Cable News Network, Inc.'s Motion to Quash the Subpoena for Production of Documents Issued by Aerofil Technology, Inc. [Doc. 433] is GRANTED in part and DENIED in part.

SO ORDERED, this 20 day of December, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge