IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1804 ALL CASES <br><br> 1:07 MD1804-TWT |

ORDER

This is an MDL proceeding in which about 200 personal injury actions are consolidated for pretrial proceedings. It is before the Court on the Plaintiffs' Motion to Exclude Certain Opinions of Drs. Mark Rigler and William Longo [Doc. 1894], and the Plaintiffs' Motion to Exclude Certain Opinions of Dr. Mitchell Sauerhoff [Doc. 1897]. For the reasons set forth below, the Plaintiffs' motions are DENIED.

I. Background

This MDL proceeding arises out of lawsuits filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal ceramic tile grout in kitchens, bathrooms, and similar areas. The purported advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the strain of using a brush and manually applying the sealant. The Plaintiffs say that the problems with Stand 'n Seal began when the manufacturer changed its chemical

components.  Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1]  But from April to May 2005, and again in July 2005, the manufacturer of Stand 'n Seal switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS.  The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal.  By August 31, 2005, Stand 'n Seal with Flexipel was recalled.

As a result of their injuries, consumers all over the country filed lawsuits asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel.  On January 5, 2007, the Judicial Panel on Multidistrict Litigation transferred the federal lawsuits to this Court for consolidated pretrial proceedings.  In their initial discovery disclosures, the Defendants disclosed several expert witnesses that intend to testify at trial.  Those experts include Mark Rigler, William Longo, and Mitchell Sauerhoff.  The Plaintiffs now move to exclude testimony from these three experts.

---

[1]Fluoropolymers are known for exceptional chemical resistance and high-temperature stability.  The most commonly known fluoropolymer is probably the DuPont brand Teflon.  Teflon is used in hundreds of products, including coating of non-stick frying pans.

II. Discussion

The Plaintiffs say that testimony from Mark Rigler, William Longo, and Mitchell Sauerhoff should be excluded because the testimony does not meet the requirements for admissible expert testimony. Rule 702 provides that:

> [A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). The reason for these requirements is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The party offering testimony from an expert must show by a preponderance of evidence that the testimony is admissible. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The Defendants offer the testimony of Mark Rigler and William Longo as experts in industrial hygiene.[2] Rigler and Longo were asked to test Stand 'n Seal to determine the amount and nature of the chemicals that consumers could have been

---

[2] Rigler and Longo have filed a joint expert report. (Def. Innovative Chemical Technologies Inc.'s Core Expert Disclosure, Ex. A, at 9.)

exposed to during routine use of Stand 'n Seal. (Def. Innovative Chemical Technologies Inc.'s Core Expert Disclosure, Ex. A, at 9.) To conduct their tests, they were given samples of Stand 'n Seal and the individual chemical components. (Id., at 6.) They then performed spray application tests that were designed to replicate routine use of Stand 'n Seal. (Id., at 7-10.) Based on the results of their tests, they intend to offer three expert opinions. First, they say that users of Stand 'n Seal "did not inhale any analytically detectable amounts of [Flexipel]." (Id., at 30.) Second, users of Stand 'n Seal "had a much higher probability of inhaling significant levels of Isopar-G," which is a hydrocarbon solvent used in all formulations of Stand 'n Seal. (Id., at 31.) As Rigler and Longo explained in their expert report:

> When SLR[, Inc.] re-formulated its [Stand 'n Seal] product using Flexipel S-22WS, that no longer contained n-butyl acetate, it is our opinion that this new [Stand 'n Seal] product posed a risk for consumers for overexposure to Isopar-G. This is because n-butyl acetate is a known eye and respiratory irritant that has a very pungent odor, which in a sense, is an early warning system/chemical for individuals who were using the Zonyl 225 [Stand 'n Seal] Grout Sealer and therefore, they would have been less likely to have stayed in the area after spraying the original SNS product long enough to have been over exposed to Isopar-G. This, of course, would be exacerbated by little or no ventilation in a bathroom shower stall environment. Combine the removal of the n-butyl acetate by SLR and the addition of a pleasant smelling fragrance additive to the Flexipel S-22WS containing [Stand 'n Seal] product and, the consumer would have never known to minimize his or her . . . exposure time in the sprayed area.

(Id.) (footnotes omitted). Third, "the significance of the removal of n-butyl acetate

from the [Stand 'n Seal] formulation would have been apparent to SLR from a review of the . . . [Material Safety Data Sheet]."  (Id., at 32.)

Rigler and Longo's expert testimony is admissible.  The Plaintiffs say that the opinion that users of Stand 'n Seal did not inhale any analytically detectable amounts of Flexipel is contradicted by Rigler and Longo's deposition testimony.  During their depositions, Rigler and Longo "admit[ted] that there is a range between zero and the detection limit of their testing in which [particles of Flexipel] could have been present, but undetectable."  (Pls.' Mot. to Exclude Certain Opinions of Drs. Mark Rigler and William Longo, at 5.)  But this admission is consistent with their expert opinions.  They have not said that users of Stand 'n Seal had absolutely no exposure to Flexipel.  Instead, they have said that users of Stand 'n Seal were not exposed to "any significant" or "analytically detectable" amounts of Flexipel.  In other words, there is a range between zero and the detection limit of their testing, but they believe that range is insignificant.

The Plaintiffs also say that the opinion that there was overexposure to Isopar-G is contradicted by the nature and timing of the Plaintiffs' injuries.  The Plaintiffs say that overexposure to Isopar-G causes only neurological injuries, not the respiratory injuries allegedly suffered by the Plaintiffs. But the Defendants intend to offer expert testimony from Mitchell Sauerhoff that overexposure to Isopar-G can cause

respiratory injuries. His report states:

> Hydrocarbon exposures, including exposures to Isopar G, are known to produce lung damage. In fact, the ExxonMobil [Chemical Corporation] Isopar G [Material Safety Data Sheet] states that Isopar G may be irritating to the eyes, nose, throat, and lungs. In addition, if swallowed and aspirated, Isopar G can cause lung damage.
>
> A review of articles cited by [the Plaintiffs' expert Henry] Spiller in forming his opinion supports the finding that hydrocarbon solvents in waterproofing sprays are alone capable of causing the lung damage claimed.

(Def. Innovative Chemical Technologies Inc.'s Core Expert Disclosure, Ex. D, at 10) (footnotes omitted). The Plaintiffs' experts disagree with Sauerhoff's opinions, but that disagreement by itself does not make Sauerhoff's or Rigler and Longo's testimony inadmissible under Rule 702. The Plaintiffs also say that n-butyl acetate was added to some cans of Stand 'n Seal with Flexipel in July 2005, and yet, even with those cans, there were still reports of respiratory injuries. But Rigler and Longo have provided some explanations for why there were still reports of respiratory injuries. They say that some users may have a low sensitivity to n-butyl acetate, which would allow them to be overexposed to Isopar-G even if n-butyl acetate was added to Stand 'n Seal. (Longo Dep. at 67.) They also say that, because of enclosed conditions, some users may not have been able to avoid overexposure to Isopar-G even after recognizing the pungent odor of n-butyl acetate. (Longo Dep. at 65.) They also say that these later complaints may have been the result of news coverage of

Stand 'n Seal and not because of genuine respiratory injuries. (Rigler Dep. at 121.) Admittedly, none of these explanations seems especially conclusive. But that only affects the weight, not the admissibility, of Rigler and Longo's testimony. "An expert need not take into account every possible factor in rendering an opinion." Bracco Diagnostics, Inc. v. Amersham Health, Inc., 2009 WL 806581, at *34 (D.N.J. Mar. 25, 2009). Therefore, Rigler and Longo's testimony should not be excluded.

The Defendants also offer the testimony of Mitchell Sauerhoff as an expert in toxicology. Sauerhoff was asked to evaluate the potential hazards of Stand 'n Seal with Flexipel and the opinions of the Plaintiffs' toxicology expert Henry Spiller. (Def. Innovative Chemical Technologies Inc.'s Core Expert Disclosure, Ex. D, at 1.) To conduct his evaluation, he was given numerous deposition transcripts, the reports of the Plaintiffs' expert witnesses, the Material Safety Data Sheets for Stand 'n Seal and its individual chemical components, and correspondence between the Defendants. (Id., at 12.) Sauerhoff's opinions are that use of Stand 'n Seal results in negligible exposure to Flexipel, Isopar-G was the more likely cause of the Plaintiffs' injuries, and Innovative Chemical Technologies, Inc. properly warned Roanoke and others about the potential health hazards of Flexipel. (Id., at 11.) Sauerhoff's expert testimony is admissible under Rule 702 and should not be excluded. The Plaintiffs' only argument for why Sauerhoff's testimony should be excluded is that his opinions

are based on Rigler and Longo's tests. But, as discussed above, their testimony is admissible, and so Sauerhoff is entitled to rely on their tests to form his opinions. Therefore, Sauerhoff's testimony should not be excluded.

III. Conclusion

For the reasons stated above, the Plaintiffs' Motion to Exclude Certain Opinions of Drs. Mark Rigler and William Longo [Doc. 1894], and the Plaintiffs' Motion to Exclude Certain Opinions of Dr. Mitchell Sauerhoff [Doc. 1897] are DENIED.

SO ORDERED, this 15 day of June, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge